

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

NOV 0 6 2019 ᴍᴄ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| Grumpy Cat Limited, | |
| Plaintiff, | Civil No. 1:19-CV-6676 |
| v. | Hon. Steven C. Seeger |
| The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A, | |
| Defendants. | |

**CONTEXTLOGIC INC. D/B/A WISH'S**
**MOTION TO INTERVENE AND MOTION IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**

Patrick J. Fitzgerald
William E. Ridgway
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel: (312) 407-0700
william.ridgway@skadden.com

Patrick Hammon (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
525 University Ave., Suite 1400
Palo Alto, California 94301
Tel: (650) 470-4500
patrick.hammon@skadden.com

*Counsel for Proposed Intervenor*
*ContextLogic Inc. d/b/a Wish*

## <u>TABLE OF CONTENTS</u>

Page

STATEMENT OF FACTS.................................................................................................2

I.    ContextLogic Inc. (Wish) .................................................................................2

II.   Wish's Measures to Protect Intellectual Property Rights .................................3

III.  Plaintiff's Request for Injunctive Relief...........................................................4

IV.  Wish's Attenuated Relation to Defendants.......................................................5

ARGUMENT ...............................................................................................................5

I.    Wish Should Be Granted Leave to Intervene...................................................5

     A.    Wish Is Entitled to Intervene as of Right ...............................................6

     B.    Alternatively, the Court Should Grant Permissive Intervention............6

II.   Injunctive Relief in This Action May Not Bind Wish......................................7

     A.    Wish Cannot Be Bound Under an Aiding and Abetting Theory ............8

     B.    Wish Is Not in "Privity" with Defendants..............................................9

III.  Plaintiff Cannot Satisfy Important Necessary Elements for Injunctive Relief ................10

     A.    Likelihood of Success on the Merits.....................................................10

     B.    Irreparable Harm in the Absence of Injunctive Relief..........................12

     C.    Balance of Hardships and Effect on the Public ....................................13

IV.  At Minimum, Wish Should Be Entitled to Discovery and Full Briefing Before a Preliminary Injunction That Binds Wish Is Issued .......................................14

V.   If the Court Grants Plaintiff's Request, Plaintiff Should Be Ordered to Post a Substantial Bond...............................................................................................14

i

## **TABLE OF AUTHORITIES**

### Cases

*Abbott Laboratories v. Mead Johnson & Co.*,
  971 F.2d 6 (7th Cir. 1992) ........................................................................................12

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
  364 F. Supp. 3d 888 (N.D. Ill. Mar. 4, 2019) ........................................................13

*ADT LLC v. Northstar Alarm Servs., LLC*,
  853 F.3d 1348 (11th Cir. 2017) ..................................................................................7

*Alemite Mfg. Corp. v. Staff*,
  42 F.2d 832 (2d Cir. 1930) ..........................................................................................7

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018) ...............................................................................................13

*Blockowicz v. Williams*,
  630 F.3d 563 (7th Cir. 2010) ...................................................................................7, 8

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ....................................................................................................11

*Carroll v. President and Comm'rs of Princess Anne*,
  393 U.S. 175 (1968) ....................................................................................................12

*Cooper v. Salazar*,
  196 F.3d 809 (7th Cir. 1999) .....................................................................................10

*eBay v. MercExchange, LLC*,
  547 U.S. 388 (2006) ....................................................................................................12

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
  549 F.3d 1079 (7th Cir. 2008) ...................................................................................10

*League of United Latin Am. Citizens Ariz. v. Reagan*,
  No. CV17-4102 PHX DGC, 2018 WL 5983009 (D. Ariz. Nov. 14, 2018) ...............7

*Michigan v. U.S. Army Corps of Engineers*,
  No. 10-CV-4457, 2010 WL 3324698 (N.D. Ill. Aug. 20, 2010) ................................5

*Microsystems Software, Inc. v. Scandinavia Online AB*,
  226 F.3d 35 (1st Cir. 2000) ..........................................................................................7

*Nat'l Spiritual Assembly of Baha'is of the U.S. of Am. Under the Hereditary Guardianship, Inc.*
  *v. Nat'l Spiritual Assembly of the Baha'is of the U.S. of Am., Inc.*,
  628 F.3d 837 (7th Cir. 2010) ...................................................................................2, 7

ii

*Ohio-Sealy Mattress Mfg. Co. v. Duncan,*
    486 F. Supp. 1047 (N.D. Ill. Jan. 30, 1980) ........................................................................13

*ONE11 Imports Inc. v. NuOp LLC,*
    No. 16-CV-7197 (JPO), 2016 WL 7338422 (S.D.N.Y. Dec. 19, 2016) ..................................10

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.,*
    188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd,* 743 F. App'x 457 (D.C. Cir. 2018) ........................8

*Regal Knitwear Co. v. N.L.R.B.,*
    324 U.S. 9 (1945) ....................................................................................................................9

*Reich v. ABC/York-Estes Corp.,*
    64 F.3d 316 (7th Cir. 1995) ....................................................................................................6

*Roche Diagnostics Corp. v. Med. Automation Sys.,* Inc.,
    646 F.3d 424 (7th Cir. 2011) ................................................................................................14

*Sands, Taylor & Wood Co. v. Quaker Oats Co.,*
    978 F.2d 947 (7th Cir. 1992) ................................................................................................11

*Sec. Ins. Co. of Hartford v. Schipporeit, Inc.,*
    69 F.3d 1377 (7th Cir. 1995) ..................................................................................................5

*Tamburo v. Calvin,* No. 94 C 5206,
    1995 WL 121539 (N.D. Ill. Mar. 17, 1995) ..........................................................................11

*Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.,*
    No. 15-cv-1724, 2015 WL 3962007 (N.D. Ill. Jun. 25, 2015) ..................................................6

*Weifang Tengyi Jewelry Trading Co. v. Intuii LLC,*
    No. 18 C 4651, 2019 WL 3889626 (N.D. Ill. Aug. 19, 2019).................................................11

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ..................................................................................................................12

**Statutes**

15 U.S.C. § 1115(b)(4) ................................................................................................................11

**Rules**

Fed. R. Civ. P. 19 ..........................................................................................................................1

Fed. R. Civ. P. 24 ................................................................................................................1, 5, 6

Fed. R. Civ. P. 24(a) ..............................................................................................................1, 5

Fed. R. Civ. P. 24(a)(2) ..........................................................................................................1, 5

Fed. R. Civ. P. 24(b) ..................................................................................................1, 6

Fed. R. Civ. P. 24(b)(1)(B) ........................................................................................1, 6

Fed. R. Civ. P. 65 ..........................................................................2, 7-10, 14-15

Fed. R. Civ. P. 65(c) ...............................................................................10, 14-15

Fed. R. Civ. P. 65(d) .....................................................................................2, 7-9

Fed. R. Civ. P. 65(d)(2) ................................................................................2, 7-9

Fed. R. Civ. P. 65(d)(2)(C) ..........................................................................2, 7-9

Pursuant to Federal Rules of Civil Procedure 24 and 19, ContextLogic Inc., d/b/a Wish ("Wish"), respectfully seeks to intervene in this matter to oppose Plaintiff Grumpy Cat Limited's ("Plaintiff") request for injunctive relief.

## INTRODUCTION

Plaintiff seeks to impose sweeping injunctive relief on Wish, a third party to this litigation, through sealed, *ex parte* proceedings against hundreds of international defendants who offered goods via Wish's online marketplace platform (the "Wish Platform"). The relief Plaintiff seeks finds no support in the law and wastes judicial resources. Notably, without the need for court intervention, Wish routinely and promptly removes infringing goods when notified by brand owners and even provides brand owners specialized tools to search for and request the removal of potentially infringing products from the Wish Platform. Plaintiff ignored those procedures and instead obtained an overbroad TRO that compels Wish—under pain of contempt—to bear the cost of searching for goods that allegedly infringe Plaintiff's trademarks and to disable all accounts associated with Defendants and freeze their assets, even though only a tiny fraction of their goods identified by Plaintiff (0.09%, to be precise) are allegedly infringing. Compliance with the TRO will require Wish to commit dozens of hours of its own workforce's time to identify additional potentially infringing Product Listings.

These onerous demands give Wish an interest in this action that will not adequately be protected by Defendants—most, if not all, of whom are unlikely to ever appear. Wish should thus be granted leave to intervene in this action to challenge both the TRO and any future injunctive relief that Plaintiff may seek. As an initial matter, the injunctive relief that Plaintiff seeks cannot bind Wish under Rule 65(d), as Wish is not in "active concert or participation" with the Defendants. To the contrary, Wish spends significant resources rooting out infringement as soon as it learns of it, and provides brand owners special tools for policing their marks.

1

Even if Wish could be bound by the TRO or a future injunction in this action, Plaintiff would not be entitled to the overbroad relief that it seeks. Based on the allegations in Plaintiff's Complaint, its infringement claims likely suffer from several defects that would make success on the merits unlikely. Plaintiff also cannot show that it will suffer irreparable harm absent the injunctive relief, particularly as it would apply to Wish.

Finally, the balance of hardships and the public interest both weigh against imposing injunctive relief on Wish. Plaintiff's proposed relief would force Wish to go well beyond its existing procedures to remove infringing posts, and instead make its own subjective determination on whether they contain products that might infringe Plaintiff's mark. Trademark violations are not always clear cut; identifying other potential instances of infringement necessarily requires Wish, rather than Plaintiff, to police Plaintiff's mark and assess whether any given post might infringe. If Plaintiff gets this subjective assessment wrong, its case is thrown out; if Wish gets it wrong, it risks a contempt citation. As a result, a TRO risks giving brand owners an anticompetitive weapon to wield against lawful competition.

More broadly, Plaintiff's requested injunctive relief would require Wish to search manually through thousands of product postings to seek out unidentified Product Listings that may potentially infringe on Plaintiff's intellectual property. The injunctive relief also would compel Wish to shut down and withhold payments for *all* of Defendants' products (*i.e.*, their entire storefront), even if only a subset of their products are alleged to be infringing. This broad injunctive relief finds no support in Rule 65(d) or intellectual property law.

## STATEMENT OF FACTS

### I.    ContextLogic Inc. (Wish)

Wish is an online and mobile e-commerce company that connects consumers and sellers of goods from around the world over the Wish Platform, on which third-party merchants

2

("Merchants") may place product posts for goods they seek to sell. In exchange for providing this online marketplace, Wish earns a commission on each sale.

Wish currently has more than 300 million users worldwide. Thousands of Merchants offer products for sale by uploading information about their products to the Wish Platform and creating a product listing ("Product Listing"). The Merchant bears responsibility for the content of these Product Listings and for completing any sales made through such Listings.

## II.     Wish's Measures to Protect Intellectual Property Rights

Wish respects intellectual property rights and devotes staff and technology to a variety of initiatives designed to prevent and respond to allegedly infringing content. For example, Wish provides an online form that allows any aggrieved party to submit a so-called "takedown request" if the party believes a Merchant is infringing or violating its rights. Wish responds to each takedown request—and typically does so in less than 48 hours. A member of the Wish Brand Protection team individually assesses each takedown request to ensure its legitimacy. When a takedown request is deemed valid, Wish works with the trademark holder to remove any infringing Product Listing. And, in certain cases, Wish uses both live resources and technological solutions to identify other potentially infringing Listings by that Merchant. Where appropriate, Wish also takes disciplinary action against infringing Merchants beyond simply removing infringing posts. Such actions can include fines and, upon repeated or flagrant infringement, suspension or termination of that Merchant's storefronts. (Behnam-Garcia Decl. ¶ 4.)

Wish also publicizes its Intellectual Property and Brand Protection policies to educate Merchants and others on the types of intellectual property rights that brand owners may seek to protect. (*Id.*) Wish also voluntarily created and maintains a comprehensive Brand Owner Partner Program, which allows any brand owner to register with Wish and gain access to specialized tools to help identify and seek removal of Product Listings on the Wish Platform that may

3

infringe the owner's intellectual property. (*Id.* ¶ 6.) Over 1,000 brands, including some of the world's most recognizable brands, currently take part in this program. (*Id.*)

### III.    Plaintiff's Request for Injunctive Relief

On October 9, 2019, Plaintiff filed this action against 1,747 Defendant Merchants,[1] alleging that they infringed Plaintiff's *trademarks* by selling counterfeit products on various websites. Shortly thereafter, proceeding *ex parte*, Plaintiff obtained a TRO—alleging both trademark *and copyright* violations—that requires Wish to, among other things, (Dkt. 49 at 3-6):

- "[D]isable and cease providing services for any accounts . . . associated with" the Defendant Merchants;

- Freeze all assets held by Wish on behalf of each identified Defendant Merchant;

- Restrain from "enabling others to sell" products that infringe Plaintiff's marks, from acts that "cause consumers to believe" the Defendant Merchants may validly use Plaintiff's marks, and from "using, linking to . . . owning . . . operating and/or hosting websites" involved with the "distribution, marketing, advertising, offering for sale, or sale" of any product infringing Plaintiff's marks; and

- Produce to Plaintiff a variety of information and records as part of "expedited discovery."

On October 29, 2019, Plaintiff served Wish with the TRO, as well as a subpoena, making Wish aware for the first time of Plaintiff's infringement allegations. Plaintiff never submitted any takedown requests in connection with the alleged infringement, never notified Wish of the TRO proceedings before the TRO was granted, and never served a copy of the underlying Complaint.

---

[1] Recently, courts in this district have questioned the propriety of joinder involving similar lawsuits. *See, e.g.*, *Hunt v. P'ships And Unincorporated Ass'ns Identified On Schedule "A"*, No. 18-cv-7845, Dkt. 18 (Dec. 18, 2018) (requiring supplemental briefing addressing whether defendants were properly joined under Rule 20(a)(2)(A)); *Anti-Age Techs. v. P'ships And Unincorporated Ass'ns Identified On Schedule "A"*, No. 19-cv-0026, Dkt. 13 (Feb. 25, 2019) ("[O]n review of the 585-Defendant Schedule A, the Court orders that Plaintiff file a memorandum explaining why joinder is proper in light of the sheer number of defendants and the unlikelihood that they are acting in concert. . . . [or] Plaintiff may file an amended complaint limiting the defendants to a subset of properly joined defendants with actual connections to each other . . . .") (Chang, J.)). Once challenged, the plaintiffs in these cases voluntarily dismissed a significant number of the defendants they initially sued. *Hunt*, No. 18-cv-7845, Dkt. 31 (Apr. 23, 2019); *Anti-Age I*, Dkt. 23 (Apr. 23, 2019). (Ridgway Decl. Exs. A–D.)

(Behnam-Garcia Decl. ¶ 8.) Instead, Plaintiff sidestepped Wish's resolution procedures and burdened the Court in the process, which was unnecessary. As soon as Wish received the TRO, Wish commenced an examination into the activities of Defendants on its Trading Platform.[2]

## IV.   Wish's Attenuated Relation to Defendants

Wish has no relationship with Defendants other than through the standard Merchant Terms of Services and Agreement (the "Merchant Agreement") into which Defendants entered before being permitted to offer products on the Wish Platform. That Agreement requires each Merchant to verify that its products do not infringe other companies' intellectual property rights. Wish receives a commission from Merchants' sales on the Platform, but does not supervise or exercise any direct control over which items Merchants decide to list on the Platform.

## ARGUMENT

## I.   Wish Should Be Granted Leave to Intervene

Under Federal Rule of Civil Procedure 24(a)(2), a litigant may intervene as of right if it can satisfy four requirements: (i) the application must be timely; (ii) the applicant must have an interest in the subject matter of the action; (iii) the applicant must show that disposition of the action may impede the applicant's ability to protect that interest; and (iv) the applicant's interest must not be adequately represented by existing parties to the litigation. *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). Alternatively, Rule 24(b)(1)(B) permits a timely applicant to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." *Id.* at 1381. The Northern District of Illinois has construed Rule 24 "liberally," resolving doubts "in favor of allowing intervention." *Michigan v. U.S. Army*

---

[2] Wish has previously received TROs seeking similar relief. In some circumstances, other plaintiffs' counsel have been willing to narrow certain aspects of the relief by agreement. That Wish has complied with prior TROs and sought to limit their scope through negotiation neither mitigates the burdensome demands contained in this TRO, nor waives Wish's ability to challenge its underlying legality.

*Corps of Engineers*, No. 10-CV-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010). Here, Wish's intervention should be granted under either provision of Rule 24.

### A.     Wish Is Entitled to Intervene as of Right

Wish satisfies all four requirements to intervene as of right in this action. This Motion was timely filed eight days after being served with a subpoena and a copy of the TRO. *See, e.g., Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (motion to intervene timely filed thirty-three days after party learned of interest in case). Wish also possesses a direct interest that may be impaired by this action. Complying with the relief sought in this action would require Wish—under threat of contempt—to review thousands of Product Listings for potential instances of additional infringement, shut down or at least freeze payments to entire online stores regardless of the number of infringing products they sold, and review and produce an expansive range of materials and information on an expedited basis. (Behnam-Garcia Decl. ¶¶ 8-13.)

Finally, Wish's interests will not be adequately represented in this action, particularly given that Defendants are unlikely to appear to challenge the injunctive relief. Even if any Defendants were to appear, they would not adequately represent Wish's interests. As set forth above, Wish has no meaningful relationship with any of the Defendants other than through the Merchant Agreement, and Defendants have no long-term financial incentives concerning Wish— or vice versa. *See Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, No. 15-cv-1724, 2015 WL 3962007, at *3 (N.D. Ill. Jun. 25, 2015) (party's lack of "motivation to represent [proposed intervenor]" helped establish inadequate representation element of Rule 24(a) inquiry).

### B.     Alternatively, the Court Should Grant Permissive Intervention

Wish also satisfies the requirements for permissive intervention under Rule 24(b). As set forth above, this Motion is timely, and Wish's interests in avoiding the onerous injunctive relief

sought by Plaintiff share common questions of law *and* fact with Defendants' interests (in avoiding the same burdens). *See supra*, 6.

## II.  Injunctive Relief in This Action May Not Bind Wish

Plaintiff seeks to impose a TRO against Wish through its litigation against well over one thousand international Defendants for alleged trademark violations. Under Rule 65(d), a plaintiff cannot subject a non-party like Wish to an injunction unless it satisfies its "burden of proving" that the non-party is "in active concert or participation with" a restrained party. Fed. R. Civ. P. 65(d)(2)(C); *see also Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010). Plaintiff cannot carry that burden.

Applying Rule 65(d), courts generally permit litigants to obtain injunctive relief against third parties in two limited circumstances: where the non-party (1) "aids or abets an enjoined party in violating the injunction," *see Blockowicz*, 630 F.3d at 567; or (2) "is in 'privity' with an enjoined party," *see Nat'l Spiritual Assembly of Baha'is of the U.S. of Am. Under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Baha'is of the U.S. of Am., Inc.*, 628 F.3d 837, 847 (7th Cir. 2010).[3] Because Wish does not fall within either category, injunctive relief that imposes obligations upon Wish is improper.

---

[3] Although no court in the Seventh Circuit has held that these two circumstances are the only ones in which such relief may be imposed on strangers to a litigation, other courts have. *See, e.g., Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930) (L. Hand, J.) (to be bound by injunction, non-party "must either abet the defendant, or must be legally identified with him"); *see also League of United Latin Am. Citizens Ariz. v. Reagan*, No. Cv17-4102 PHX DGC, 2018 WL 5983009, at *2 (D. Ariz. Nov. 14, 2018) ("Case law recognizes that this rule applies to two categories of persons: nonparties who aid and abet a party in violating a court order, and nonparties who are in privity with a nonparty, generally meaning nonparties who are in some way legally identified with the enjoined party." (citing *ADT LLC v. Northstar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017)); *accord Microsystems Software, Inc. v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000) (calling this the "tried and true dichotomy").

7

### A.  <u>Wish Cannot Be Bound Under an Aiding and Abetting Theory</u>

As a threshold matter, any argument that an aiding-and-abetting theory would permit Plaintiff to seek an order simultaneously enjoining Defendants *and* third parties like Wish would misapprehend Rule 65(d). As the Seventh Circuit explained in *Blockowicz*:

> Actions that aid and abet in violating the injunction must occur *after* the injunction is imposed for the purposes of Rule 65(d)(2)(C) . . . . This requirement is apparent from Rule 65(d)(2)'s text, which requires that nonparties have 'actual notice' of the injunction . . . . [P]ermitting [third parties'] pre-injunction conduct to bind them to the injunction would be inconsistent with the purpose of Rule 65(d)(2)(C), which is to prevent defendants from rendering injunctions void by carrying out prohibited acts through third parties who were not parties to the original proceeding.

630 F.3d at 568 (emphasis added); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 120-21 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) (request to simultaneously enjoin defendant and third-parties under aiding and abetting theory "plainly misunderst[ood] Rule [65(d)(2)] and the limitations of the Court's jurisdiction"). In other words, third parties like Wish cannot be bound by an injunction at its inception based on an aiding-and-abetting theory—they may only be bound if they are found to have aided and abetted a previously bound party in violating the injunction, and even then, only if the violation occurred after they had actual notice of the injunction.

Here, there can be no basis to claim that Wish aided and abetted Defendants in violating an existing injunction. Rather, Plaintiff has taken the position that Wish was bound by the TRO from the minute it issued. And Plaintiff certainly could not argue that Wish aided and abetted any violations after receiving actual notice of the TRO. Indeed, immediately upon learning of the TRO (via Plaintiff's subpoena), Wish began the process of removing infringing posts. (*See* Behnam-Garcia Decl. ¶¶ 9-14.)

8

Moreover, even if pre-injunction conduct could bind non-parties like Wish to the injunction, Plaintiff cannot meet its burden to establish that anything Wish has done amounts to aiding and abetting. Wish's Intellectual Property and Brand Protection policies strictly prohibit infringement of others' intellectual property rights. And Wish's Merchant Agreement requires all Merchants who use the Wish Platform to affirm that their products do not infringe other companies' intellectual property rights. When infringing products are confirmed on the Wish Platform, Wish promptly removes the infringing Product Listing and, where appropriate, takes other disciplinary actions including fines, suspension, or termination of the infringing Merchant's storefronts. Plaintiff bypassed that process here, however, by seeking a TRO before contacting Wish. (*Id.* ¶ 8.) In any event, Wish cannot be regarded as aiding and abetting infringement when it strictly prohibits and seeks to address such conduct.

### B. <u>Wish Is Not in "Privity" with Defendants</u>

Wish's limited commercial relationship with Defendants also does not qualify as "privity" under Rule 65(d)(2)(C). "Privity" for purposes of Rule 65(d) is far narrower than in the general contractual context; it "requires an extremely close identification and will be satisfied only" when the non-party had "substantial discretion, control and influence over the enjoined [party]." *Baha'is*, 628 F.3d at 854-55 (affirming no-privity finding even for former "key officers" who "participated in" underlying trademark litigation); *see also Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) (court may only enjoin non-parties "identified with [Defendants] in interest, in 'privity' with them, represented by them or subject to their control").

Plaintiff cannot meet that standard here. Wish has no "substantial discretion, control and influence" over any of the Defendants. Besides Wish's commission and the standard Merchant Agreement—which permits Defendants to place and promote Product Listings on the Wish Platform only if they verify that their products do not infringe on any intellectual property rights

9

and agree to abide by Wish's Intellectual Property and Brand Protection policies—Wish and the Defendants have no other meaningful business dealings or contractual relations. Importantly, Wish has no influence over what products Defendants list on the Wish Platform, other than its right to remove Listings that violate others' intellectual property rights. The arm's-length relationship between Wish and Defendants does not qualify as the kind of "extremely close identification" that is required for a finding of privity. *Baha'is*, 628 F.3d at 854-55; *see also ONE11 Imports Inc. v. NuOp LLC*, No. 16-CV-7197 (JPO), 2016 WL 7338422, at *2 (S.D.N.Y. Dec. 19, 2016) ("Without evidence that the relationship between NuOp and the nonparty retailers 'is anything but an arm's length transaction involving totally distinct entities,' the Court's preliminary injunction Order . . . is not binding on nonparty retailers. . . .") (citation omitted).

For these reasons, Wish does not fall within either of the two narrow exceptions to the general rule that injunctions may not bind non-parties. Plaintiff's attempt to bind Wish to the injunctive relief sought in this case thus is improper.

## III. <u>Plaintiff Cannot Satisfy Important Necessary Elements for Injunctive Relief</u>

Under Rule 65, a party seeking preliminary injunctive relief bears the burden of showing that it has a likelihood of succeeding on the merits of its underlying claims, that no adequate remedy at law exists, and that it will suffer irreparable harm in the interim period prior to final resolution of its claims. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). In addition, the Court should assess the "balance of hardships" and the effect that the injunction would have on the public. *See Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Here, several of these factors weigh against the issuance of injunctive relief, particularly against Wish.

### A. <u>Likelihood of Success on the Merits</u>

The likelihood that Plaintiff will succeed on the merits of its underlying trademark claims

10

is difficult to assess based on the TRO and Complaint, which are the only documents available to Wish.[4] Based on what can be gleaned from them, however, it is likely that Plaintiff will face a number of hurdles in proving its claims on the merits. Some examples include:

- *Fair use*: Given the descriptive nature of the term "grumpy cat," some of the products identified by Plaintiff may constitute fair use of Plaintiff's alleged trademarks. *See* 15 U.S.C. § 1115(b)(4) (providing a defense if the alleged infringement "is a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services of such party"). This defense "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir. 1992). The "fair use" defense requires a fact-specific inquiry. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

- *Extraterritorial reach*: Plaintiff seeks relief in jurisdictions where it may not have intellectual property rights. The Wish Platform is accessible throughout the world—including in countries where Plaintiff has no trademark rights. Plaintiff's request, however, lacks geographic tailoring and grants worldwide injunctive relief. Plaintiff may lack grounds to assert that the Lanham Act applies extraterritorially here. Relatedly, Plaintiff may lack grounds in numerous instances to assert that the Lanham Act applies extraterritorially to particular foreign conduct.

- *Misuse and unclean hands defenses*: Given that the relief sought by Plaintiff exceeds its intellectual property rights, Plaintiff has opened itself to "trademark/copyright misuse" or "unclean hands" defenses. *See, e.g., Weifang Tengyi Jewelry Trading Co. v. Intuii LLC,* No. 18 C 4651, 2019 WL 3889626, at *8 (N.D. Ill. Aug. 19, 2019) ("trademark misuse" defense permitted where plaintiff conducted no pre-suit investigation to determine whether defendants' conduct actually infringed plaintiff's intellectual property rights, in the hope that defendant would pay a settlement to avoid harm to its business); *Tamburo v. Calvin*, No. 94 C 5206, 1995 WL 121539, at *7 (N.D. Ill. Mar. 17, 1995) (copyright misuse where holder "extended [its] monopoly beyond the limited scope afforded by copyright law").

Apart from the merits of Plaintiff's infringement claims, Plaintiff would not be entitled to the broad relief afforded in the TRO. First, the TRO imposes restraints based on Plaintiff's alleged copyrights, (Dkt. 49 at 1 (referencing "Trademarks or Copyrights"), 2 (listing Plaintiff's 20 registered copyrights)), yet its Complaint does not assert any claims for copyright

---

[4] The docket remains under seal, so Wish cannot access any other submissions Plaintiff may have made to the Court. If there are arguments Wish did not anticipate, it requests the opportunity to address those in a filing. Wish also request that the docket and the filings in this case, including this Motion, be unsealed.

infringement; the claims all involve alleged trademark infringement. Plaintiff unquestionably is not likely to succeed on the merits of a claim it did not even plead.

Second, the relief that Plaintiff seeks would require full store shut-downs or asset freezes, even where only a tiny fraction (about 0.9%) of the products sold by any given store (as identified by Plaintiff itself) allegedly are infringing its intellectual property rights. (Behnam-Garcia Decl. ¶ 14.) Nevertheless, the relief that Plaintiff seeks would require that the entire store be shut down and all assets frozen. This would be akin to closing down an entire retail store and freezing payments to suppliers and employees simply because one product was identified as infringing. Trademark law does not grant such draconian remedies. *See, e.g., Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 18-19 (7th Cir. 1992) (court committed error by not tailoring injunctive relief to reflect less severe remedies that would leave defendant "a viable competitor" in the marketplace); *see also Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 184 (1968) (injunction must be "tailored as precisely as possible to the exact needs of the case").

**B.      Irreparable Harm in the Absence of Injunctive Relief**

Plaintiff cannot obtain injunctive relief against Wish without making a "clear showing" that, absent an injunction, it faces a "likelihood of irreparable injury—not just a possibility." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 21 (2008). Nor may courts "presume" irreparable harm based on a "clear showing" of likely success on the merits. *eBay v. MercExchange, LLC*, 547 U.S. 388 (2006).

Plaintiff cannot claim that it would suffer irreparable harm in the absence of an injunction binding Wish when it declined to ask Wish to remove the allegedly infringing Product Listings in the first place. (Behnam-Garcia Decl. ¶ 8.) Courts should not be used to issue injunctions to require a company to do what it has already agreed to do. Indeed, once Wish became aware of these Product Listings through the TRO, it began the process of removing them. Plaintiff could

12

not possibly be at risk of any future harm, irreparable or otherwise, absent injunctive relief against Wish.

### C. **Balance of Hardships and Effect on the Public**

The injunctive relief sought by Plaintiff would impose undue hardship on Wish. To fully comply with the injunction's specific and onerous requirements, Wish would need to commit twenty-three employees, each of whom would need to spend approximately 80 hours reviewing thousands of Product Listings for potential instances of additional infringement. (*Id.* ¶ 13.) This would cause significant disruption to Wish's business.

When assessing the balance of hardships, courts considering the imposition of injunctive relief also must consider whether the party seeking the injunction has shown "reasonable diligence" in preventing the alleged harm. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). As noted above, Plaintiff refused to use Wish's notice-and-takedown procedures when it discovered the allegedly infringing Product Listings, and instead jumped straight into litigation. The Court should not reward Plaintiff for wasting judicial resources with an overbroad injunction.

Accordingly, even if Plaintiff could make a plausible showing that injunctive relief against Wish is necessary to avoid irreparable harm, the injunctive relief sought here still would be inappropriate because it would impose even greater hardship on Wish than it would prevent for Plaintiff. *See Ohio-Sealy Mattress Mfg. Co. v. Duncan*, 486 F. Supp. 1047 (N.D. Ill. Jan. 30, 1980) (denying injunctive relief, in part, based on the balance of hardships).

Even if the balance of hardships tipped in Plaintiff's favor, the harm that the public would suffer if non-party trading platforms like Wish were subject to injunctive relief in cases like this one counsels heavily against requiring such compliance. "The public has an interest in free and fair competition." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 888, 909 (N.D. Ill.

Mar. 4, 2019) (denying injunction where movant sought to bar defendant from operating in a subset of the abrasives industry since it would "disserve the public interest").

Here, if trading platforms like Wish were subject to the injunctive relief that Plaintiff seeks, they likely would need to make difficult qualitative judgments based on other parties' alleged rights (and without any discovery), take down hundreds of Product Listings that do not, in fact, infringe Plaintiff's intellectual property rights, and shut down entire online storefronts that only include one or a few Listings that are alleged to infringe. Not only does this restrain customer choice and invite trademark owners to squelch competition from generic brands, it exposes Wish to potential commercial and legal backlash from its Merchants.

## IV. At Minimum, Wish Should Be Entitled to Discovery and Full Briefing Before a Preliminary Injunction That Binds Wish Is Issued

In the event the Court does not outright decline to subject Wish to injunctive relief, it respectfully requests the opportunity to provide full briefing on any preliminary injunction motion that Plaintiff files and permit Wish to seek targeted discovery—on an expedited basis— in order to properly and fully brief its opposition to any such motion.[5]

## V. If the Court Grants Plaintiff's Request, Plaintiff Should Be Ordered to Post a Substantial Bond

Rule 65(c) requires injunction plaintiffs to post a bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). That is because injunctions "can injure litigants," and preliminary injunctions "are more likely to be erroneous than injunctions issued at the close of the litigation." *Roche Diagnostics Corp. v. Med. Automation Sys.*, Inc., 646 F.3d

---

[5] Wish should be permitted to take discovery concerning, at a minimum: (i) the validity of Plaintiff's claimed trademarks and copyrights; (ii) Plaintiff's diligence in investigating whether the products actually violate Plaintiff's rights, including why Plaintiff did not use Wish's takedown procedures; (iii) any assertion regarding irreparable harm; (iv) the amount of time Plaintiff has known about the alleged infringing activities, potentially for a laches defense; and (v) Plaintiff's joinder of over 1,700 defendants.

424, 428 (7th Cir. 2011). "Judges therefore should take care that the bond is set high enough to cover the losses that their handiwork could cause." *Id.* By its own terms, Rule 65 thus requires courts to consider not only the potential harms to plaintiffs and defendants, but also to non-parties that are "enjoined or restrained" by the injunction in calculating the appropriate amount for bonding. Fed. R. Civ. P. 65(c).

Here, Plaintiff should be ordered to post a substantial bond that would cover the significant harm that forced compliance with the injunction would cause Wish. Relevant considerations include: (i) the number of employee hours Wish would need to commit to complying with the injunction; (ii) the commissions of which Wish will be deprived from sales that are wrongfully halted due to the injunction; (iii) the harms Wish and its consumers will suffer in the marketplace due to unjustly restrained consumer choices; and (iv) lost relationships with other Merchants whose dealings with Wish are chilled due to the fear of being subjected to a meritless injunction like the one requested by Plaintiff.

## CONCLUSION

Wish already devotes substantial resources to detecting and removing trademark infringement from its online marketplace. Yet Plaintiff made no effort to engage Wish's takedown process. Instead Plaintiff notified Wish that it was bound by a TRO issued after an *ex parte* proceeding. This attempt to bind Wish cannot withstand scrutiny. Wish is not in "active concert or participation" with the alleged infringers in this case. And as for the injunctive relief that Plaintiff inevitably will seek, it cannot make the "clear showing" necessary to support such an "extraordinary and drastic" remedy against Wish.

Wish respectfully requests that any request for injunctive relief against Wish be denied, including the obligation to search its Platform for potential instances of infringement and to freeze all assets and disable all accounts associated with the Defendant Merchants' accounts.

DATED:      November 6, 2019

Respectfully submitted,

Patrick J. Fitzgerald
William E. Ridgway
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Tel: (312) 407-0700
william.ridgway@skadden.com

Patrick Hammon (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
525 University Ave., Suite 1400
Palo Alto, California 94301
Tel: (650) 470-4500
patrick.hammon@skadden.com

*Counsel for Proposed Intervenor*
*ContextLogic Inc. d/b/a Wish*

hs16

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2019, I served the foregoing Motion to Intervene and Motion in Opposition via mail on all attorneys of record known to have entered an appearance in this proceeding.

William E. Ridgway